IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ODWIN DODANIM PENA, <br> Reg. No. 87542-479, | ) <br> ) <br> ) | |
| Petitioner, | ) <br> ) <br> ) | |
| v. | ) <br> ) | CASE NO. 2:25-CV-886-WKW <br> [WO] |
| MILTON WASHINGTON, | ) <br> ) <br> ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Petitioner Odwin Dodanim Pena, an inmate in the custody of the Federal Bureau of Prisons (BOP) at the Federal Prison Camp in Montgomery, Alabama (FPC-Montgomery), is serving an 80-month sentence for his conviction for conspiracy to launder monetary instruments, to be followed by a three-year term of supervised release. *See United States v. Pena*, No. 3:18-cr-22-018 (S.D. Tex. Feb. 21, 2023), ECF No. 1791; (Doc. # 19-1.) Proceeding *pro se*, he filed this Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, alleging that the BOP improperly has refused to transfer him to prerelease custody based on earned time credits under the First Step Act of 2018 (FSA), in violation of 18 U.S.C. § 3632(d)(4)(C) and his rights to due process under the Fifth Amendment to the U.S.

Constitution.[1]  (Doc. # 1 at 6; Doc. # 2 at 6–8.)  He seeks multiple forms of relief, all aimed at securing immediate placement in prerelease custody.  (Doc. # 2 at 7–8.)

Respondent Milton Washington, in his official capacity as the warden of FPC-Montgomery, filed a response in opposition to the § 2241 petition.  (Doc. # 19.)  He seeks dismissal on the following grounds:  (1) Petitioner's claims concerning the calculation of FSA earned time credits are not ripe for judicial review under 18 U.S.C. § 3624(g)(1)(A) and, thus, subject matter jurisdiction is lacking; (2) Petitioner did not exhaust available administrative remedies prior to filing this petition, and he has not shown that BOP personnel thwarted his efforts to submit a grievance; (3) Petitioner fails to state a claim because his allegations are vague, general, and conclusory; (4) to the extent Petitioner challenges the BOP's individualized determinations, the provisions of the Administrative Procedure Act governing judicial review, *see* 5 U.S.C. §§ 701–06, do not apply to the BOP's determinations under 18 U.S.C. §§ 3621–3626; and (5) Petitioner's claims fall

---

[1] Section 18 U.S.C. § 3632(d)(4)(C) provides:

> Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release.  The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4)(C) (citing 18 U.S.C. § 3624(g)).  The Due Process Clause of the Fifth Amendment to the U.S. Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."

outside the core of habeas corpus because they challenge the conditions of confinement, rather than the fact or duration of custody. (Doc. # 19 at 3–15.) Thereafter, Petitioner was ordered to file a reply to the response. (Doc. # 21.) The Order further explained that the court would decide whether an evidentiary hearing is needed and, if not, would resolve the petition as law and justice require. (Doc. # 21 at 1 (citing Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*[2] [hereinafter, *Rules Governing § 2254 Cases*])); *see also* 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require."). Petitioner complied with the Order by filing a reply. (Doc. # 22.)

For the reasons set forth below, Respondent's threshold argument—that the petition is not ripe for review—is dispositive and requires dismissal. Because ripeness implicates the court's subject matter jurisdiction, the petition will be analyzed under the standard governing motions brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure.[3] An evidentiary hearing is not necessary. Rule 8(a), *Rules Governing § 2254 Cases*.

---

[2] The *Rules Governing § 2254 Cases* apply to petitions under 28 U.S.C. § 2241. *See* Rule 1(b), *Rules Governing § 2254 Cases* (providing that the *Rules* apply to habeas corpus petitions filed under provisions other than § 2254).

[3] Under Rule 12 of the *Rules Governing § 2254 Cases*, the Federal Rules of Civil Procedure may be applied to the extent that they are not inconsistent with any statutory provisions or the *Rules*. *See Rodriguez v. Fla. Dep't of Corr.*, 748 F.3d 1073, 1075 (11th Cir. 2014) (observing that courts may supplement the *Rules Governing § 2254 Cases* with the Federal Rules of Civil Procedure

## II. JURISDICTION

Section 2241(a) grants jurisdiction to the district court to provide habeas relief when the inmate is confined within its district at the time the petition is filed. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434 n.7 (2004) ("The word 'jurisdiction,' of course, is capable of different interpretations. We use it in the sense that it is used in the habeas statute, 28 U.S.C. § 2241(a), and not in the sense of subject-matter jurisdiction of the District Court."); *see also Fernandez v. United States*, 941 F.2d 1488, 1495 (11th Cir. 1991) ("Section 2241 petitions may be brought only in the district court for the district in which the inmate is incarcerated."). Respondent does not contest this statutory grant of jurisdiction; however, he argues that subject matter jurisdiction is lacking because Petitioner's claims seeking immediate placement in prerelease custody based on the BOP's alleged misapplication of FSA earned time credits is not ripe. *See generally Rumsfeld*, 542 U.S. at 434 n.7 (referring to jurisdiction "in the sense that it is used in the habeas statute, 28 U.S.C. § 2241(a), and not in the sense of subject-matter jurisdiction of the District Court"). This jurisdictional issue is addressed below.

---

when not inconsistent (citing Rule 12, *Rules Governing § 2254 Cases*)). Here, application of Federal Rule of Civil Procedure 12(b)(1) presents no such inconsistency.

### III. STANDARD OF REVIEW

Under Rule 12(b)(1), challenges to subject matter jurisdiction can be either facial or factual. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). A facial attack contests subject matter jurisdiction based on (1) the petition alone, with the non-conclusory allegations accepted as true, or (2) the petition "supplemented by undisputed facts evidenced in the record." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007); *see also Ikhine v. Nielsen*, 2018 WL 11446850, at *1 (N.D. Ga. Aug. 21, 2018) (explaining that because the court was "considering only 'the complaint supplemented by undisputed facts evidenced in the record,'" the challenge to "subject matter jurisdiction remain[ed] a facial, as opposed to a factual, attack" (citing *McElmurray*, 501 F.3d at 1251)). Here, because the material facts reflected in the record are undisputed, Respondent's jurisdictional challenge is treated as a facial attack.

When the challenge is a facial attack, the court "accept[s] the well-pleaded factual allegations in the complaint as true." *Lawrence v. United States*, 597 F. App'x 599, 602 (11th Cir. 2015) (per curiam). However, the court is "not required to accept mere conclusory allegations as true, nor [is it] required to accept as true allegations in the complaint that are contrary to factual details presented in the exhibits." *Id.* "Rather, 'when the exhibits contradict the general and conclusory

5

allegations of the pleading, the exhibits govern.'" *Id.* (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007)); *see also City of Pembroke Pines v. Fed. Emergency Mgmt. Agency*, 494 F. Supp. 3d 1272, 1282 (S.D. Fla. 2020) (finding that a complaint "must contain sufficient non-conclusory allegations to create a plausible inference that subject matter jurisdiction exists").

## IV.  BACKGROUND

### A.    The Petition, Response, & Reply

#### 1.    *The Petition*

The 28 U.S.C. § 2241 petition, which is submitted on the preprinted AO 242 (Rev. 09/17) form, sets forth no grounds for relief and no supporting facts.  Instead, it repeatedly refers to a separate memorandum of law.  (*See, e.g.*, Doc. # 1 at 6.) Specifically, in the section titled "Grounds for Your Challenge in This Petition," the form instructs the petitioner to "[s]tate every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States." (*Id.*)  The form provides space to list each ground (*e.g.*, "GROUND ONE") and the corresponding "Supporting facts," with the parenthetical instruction: "(Be brief. Do not cite cases or law.)" (*Id.*)  In the petition, Petitioner indicates he has two grounds for relief.  However, for both Ground One and Ground Two, he provides only the statement, "See Memorandum of Law in Support of Motion." (*Id.*)

6

He likewise alleges no supporting facts, again stating only, "See Memorandum of Law in Support of Motion." (*Id.*)

The Memorandum of Law in Support of Motion is not signed under penalty of perjury or otherwise verified. *See* 28 U.S.C. § 2242 ("Application for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf."); Rule 2(c)(5), *Rules Governing § 2254 Cases* ("The petition must . . . be signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. § 2242."). Factual allegations set forth in an unverified brief need not be accepted by the court when those allegations are not included in the verified petition. In *Fargesen v. Warden FCI Pensacola*, the court found that, because the memorandum referenced in and attached to the § 2241 petition, was "unsworn and therefore not verified," it was "free to reject the allegations in the memorandum."[4] 2025 WL 2414637, at *1 (N.D. Fla. July 30, 2025), *R&R adopted*, 2025 WL 2411753 (N.D. Fla. Aug. 20, 2025).

Even if the factual allegations in Petitioner's unverified memorandum of law are accepted, they remain wholly conclusory and provide no specific facts showing how the BOP allegedly misapplied Petitioner's federal time credits (FTCs) under the

---

[4] In *Fargesen*, as here, the petition itself was signed under penalty of perjury, declaring "that the information in this petition is true and correct," but the attached memorandum of law was not. *See* 3:25-cv-1018-MW-MAL, ECF No. 1 at 8; ECF No. 1-1 at 6; (Doc. # 1 at 8.)

FSA.[5]  In the memorandum of law, Petitioner alleges that he has actively participated in recidivism-reduction programs and that he has accumulated FTCs.  He says that the BOP "has failed to properly apply these credits towards his release date, pre-release custody eligibility, or supervised release, as mandated by law" (Doc. # 2 at 2) and that this failure "has extended his confinement beyond lawful limits" (*id.* at 5).

Petitioner's factual allegations are conclusory because, while he generally alleges participation in recidivism-reduction programs and the accumulation of FTCs, he pleads no supporting facts identifying how many FTCs he contends he has earned, the number of FTCs the BOP has calculated, or how many FTCs the BOP allegedly has failed to properly apply.  He also does not identify what he contends his prerelease-custody eligibility date would be with a proper application of FTCs.  Instead, he offers only repeated, generalized statements that the BOP failed to properly apply his FTCs, without factual allegations tying any specific FTC calculation or decision to any specific prerelease custody consequence.

Based on these and similar cursory factual allegations, Petitioner brings two grounds for relief.  First, he contends that the BOP's "failure to apply [his] earned FTC[s]" violates the FSA, namely, 18 U.S.C. § 3632(d)(4)(C).  (*Id.* at 6.)  Second, he asserts that the BOP has arbitrarily refused to apply his FTCs, thereby depriving

---

[5] In this Memorandum Opinion and Order, federal time credits are referred to as "FTCs," consistent with BOP's usage in the documents submitted by Respondent.

him of a statutorily created liberty interest and violating his Fifth Amendment due process rights. (*Id.* at 7.) He requests, among other relief, immediate full application of all his FSA FTCs and a recalculation of his release date, as well as a transfer "forthwith to appropriate prerelease custody, including [a] residential reentry center or home confinement." (*Id.* at 7–8.)

### 2.    *The Response*

In support of his response, Respondent submits a declaration from Jason White, an attorney advisor for the BOP (Doc. # 19-1 at 1–2 (Decl. of Jason White), who states that he has access to the BOP's official records concerning inmates' confinement (*id.* at 1, ¶ 2). Based on Petitioner's FSA Time Credit Assessment, and as confirmed by Mr. White, Petitioner has earned 465 days of FTCs from the start date of his incarceration (June 19, 2023) through March 18, 2026. (Doc. # 19-1 at 13 (Attach. 3, FSA Time Credit Assessment dated March 18, 2026); Doc. # 19-1 at 2, ¶ 8.) Petitioner earned 10 FTCs every 30 days from June 19, 2023, to January 13, 2024, and he has been earning FTCs at the statutory maximum rate of 15 FTCs every 30 days since January 13, 2024. (Doc. # 19-1 at 13–14.)

The FSA Time Credit Assessment shows how FTCs earned under the FSA and Second Chance Act (SCA) days, as well as good conduct time (GCT), will be

applied under the "best case scenario."[6]  (Doc. # 19-1 at 15.)  As of March 18, 2026, Petitioner's projected release date based on GCT is May 4, 2029, and his projected release date under the FSA—based on the BOP's provisional application of 365 earned FTCs—is May 4, 2028.[7]  (Doc. # 19-1 at 13, 15; *see also* Doc. # 19-1 at 5, 8 (Attach. 1, Public Information Inmate Data).)  The May 4, 2028 date is reflected on the FSA Time Credit Assessment as Petitioner's FSA Projected Release Date and FSA Conditional Release Date.  (Doc. # 19-1 at 15.)  Thus, of Petitioner's 465 earned FTCs, the BOP has provisionally applied 365 FTCs to reduce his term of imprisonment.  (Doc. # 19-1 at 15; Doc. # 19-1 at 2, ¶ 8.)  Also, as of March 18, 2026, Petitioner has earned an additional 100 FTCs, which are to be applied toward prerelease custody.  (Doc. # 19-1 at 13; *see also* Doc. # 19-2 at 15 (BOP Program Statement No. 5410.01, which provides that "[p]re-release placement in a Residential Reentry Center (RRC) or Home Confinement (HC) will be based on FTCs other than those credits already applied to early transfer for supervised release.").[8])

---

[6] The BOP's FSA Time Credit Assessment expressly states that its projections reflect a "best case scenario" and are subject to change based on a number of factors.  (Doc. # 19-1 at 15.)

[7] The May 4, 2028 projected release date also appears on the Inmate Locator website maintained by the BOP.  *See* Find an Inmate, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited June 1, 2026).

[8] Respondent submitted BOP Program Statement No. 5410.01, dated November 18, 2022, containing unexplained highlighting and strikethroughs.  (Doc. # 19-2.)  Independent research indicates that these markings reflect revisions made by the BOP's Change Notices to Program

Furthermore, the FSA Time Credit Assessment reflects that Petitioner has 325 FSA Conditional Placement Days, resulting in an FSA Conditional Placement Date of June 14, 2027.  (Doc. # 19-1 at 15.)  Those 325 days consist of the 100 "excess" FTCs earned as of March 18, 2026, plus an additional 225 FTCs Petitioner is projected to earn.  With 325 FTCs provisionally applied toward prerelease custody, Petitioner's best-case eligibility date for prerelease custody placement under the FSA is June 14, 2027, which is 325 days sooner than his FSA Projected Release Date/Conditional Release Date of May 4, 2028.  *See Holland v. Gabby*, 2025 WL 1287749, at *3 (N.D. Fla. Apr. 9, 2025) (explaining the calculation of the FSA Conditional Placement Date on the BOP's FSA Time Credit Assessment), *R&R adopted*, 2025 WL 1285822 (N.D. Fla. May 1, 2025).

Finally, the March 18, 2026 FSA Time Credit Assessment reflects 283 SCA Recommended Placement Days, with a notation that this recommendation was made following a five-factor review.  (Doc. # 19-1 at 15.)  The five-factor review is an individualized assessment under 18 U.S.C. § 3621(b).

Additionally, about a year earlier, after an individualized SCA assessment applying the five factors in § 3621(b), Petitioner was recommended for placement

---

Statement No. 5410.01, dated March 10, 2023, and February 6, 2023.  *See* https://www.bop.gov/mobile/policy/index.jsp (choose "Program Statements" from the "Policy Type dropdown; then choose "Inmate and custody management" from the "Program Statement Category" dropdown; then, in the space provided for "Policy Name or Number, type "5410.10"; then click "Search"; then click the hyperlink titled, "First Step Act of 2018 - Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)").

in a residential reentry center beginning August 18, 2026.  That recommendation appears in the BOP's "Institutional Referral for CCC Placement" form, dated March 17, 2025.  (Doc. # 19-1 at 24–25 (Attach. 5, Referral for CCC Placement); *see also* Doc. # 19-1 at 2, ¶ 10.)  The recommended placement date is based on the combination of "forecasted" FTCs under the FSA (presumably earned and projected FTCs in excess of those allocated to early placement on supervised release) and discretionary days awarded under the SCA.[9]  (Doc. # 19-1 at 25; *see also* Doc. # 19-2 at 16 (BOP Program Statement No. 5410.01, providing that "[t]he RRC and/or HC recommendation will include the total number of days recommended based on the Five Factor Review (see 18 U.S.C. § 3621(b)), required under the Second Chance Act, plus the remaining number of FTC days not applied to supervised release at the time of the referral.").)

### 3.    *The Reply*

In his reply (Doc. # 22), Petitioner does not dispute Respondent's submissions.  He does not challenge the FTC calculations in the March 18, 2026 FSA Time Credit Assessment.  (Doc. # 19-1 at 13–14.)  In fact, he points out that Respondent does not dispute that:  (1) Petitioner has earned approximately 465

---

[9] "Additional days awarded to inmates under the SCA are discretionary and subject to consideration of various factors."  *Carrillo v. Warden FPC Pensacola*, 2025 WL 1439526, at *4 (N.D. Fla. Apr. 21, 2025), *R&R adopted*, 2025 WL 1433566 (N.D. Fla. May 19, 2025); *see also* 18 U.S.C. § 3621(b) (providing that "[n]otwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court.").

FTCs; (2) 365 FTCs have been applied (provisionally) toward early transfer to supervised release; (3) 100 FTCs "remain as excess earned credits"; and (4) he has been referred for placement in a residential reentry center beginning August 18, 2026. (Doc. # 22 at 5.)  Accordingly, these facts are undisputed.  Petitioner nevertheless contends that, if "properly applied," his 100 excess FTCs should be credited against his August 18, 2026 recommended RRC placement date (*id.* at 7), but he points to no evidence to support this bald assertion.

**B.**    **The FSA and SCA**

Petitioner's claims arise under the FSA, but his arguments also implicate the SCA.  Thus, a brief overview of how the FSA's earned-time-credit framework interacts with the SCA provides useful context for the relief he seeks and the BOP's placement determinations.  The SCA, as codified in relevant part at 18 U.S.C. § 3624(c), predates the FSA and established the initial mechanism for prerelease custody for federal prisoners.  Under § 3624(c)(1), a prisoner "may" be placed in prerelease custody at an RRC for up to 12 months before the end of the sentence.  A prisoner also may be placed in home confinement not to exceed "the shorter of 10 percent of the term of imprisonment . . . or 6 months."  § 3624(c)(2).  But the SCA neither requires nor guarantees 12 months in prerelease custody, whether in a community correctional facility/residential reentry center or otherwise, because the language of § 3624(c) is discretionary, not mandatory.  *See* § 3624(c) ("The Director

13

of the [BOP] shall, to the extent practicable, . . . ." § 3624(c)(1); "[s]uch conditions may include a community correctional facility," *id.*; "[t]he authority under this subsection may be used to place a prisoner in home confinement," § 3624(c)(2); "[t]he [BOP] shall, to the extent practicable, . . . ." *id.*).

In 2018, Congress passed the FSA. *See* Pub. L. No. 115-391, 132 Stat. 5194 (2018) (codified at 18 U.S.C. §§ 3621, 3624, 3631–35). The FSA built upon the SCA by allowing FTCs to extend prerelease custody beyond the SCA's statutory limits. *See* 18 U.S.C. §§ 3624(g)(10), 3632(d)(4)(C). The FSA's provisions work together to motivate eligible inmates to participate in recidivism-reduction programs by awarding them earned time credits. §§ 3621(h), 3624(g), 3632. Participants may earn 10 days—or, in some instances, 15 days—of credit for every 30 days of successful program participation. Each credit constitutes one FTC and is equivalent to one day. *See* 18 U.S.C. §§ 3621, 3624, 3631–35.

FTCs are applied to accelerate an inmate's transfer either to prerelease custody, which includes residential reentry centers and home confinement, or to supervised release if such a term has been imposed. *See* § 3624(g); *see also* § 3632(d)(4)(C) (titled, "Application of time credits toward prerelease custody or supervised release"). Section 3624(g) sets forth the requirements "eligible prisoners" must satisfy to have FTCs applied toward early transfer to prerelease custody or supervised release. The first requirement, outlined in § 3624(g)(1)(A), is

14

central to Respondent's ripeness argument; it provides that "eligible prisoners" must have earned FTCs "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." § 3624(g)(1)(A).  Second, the prisoner must have "shown through the periodic risk reassessments a demonstrated recidivism risk reduction" or have "maintained a minimum or low recidivism risk" during imprisonment. § 3624(g)(1)(B).  Third, the prisoner's remaining sentence must have been computed "under applicable law." § 3624(g)(1)(C).  Fourth, for placement in prerelease custody, the prisoner must have a minimum or low recidivism risk score in the last two reassessments or have a petition approved by the warden.  *See* § 3624(g)(1)(D)(i).  Fifth, for placement in supervised release, the prisoner must have been assessed as a minimum or low risk to recidivate in the last reassessment. § 3624(g)(1)(D)(ii).  FTCs also can be revoked as a sanction for disciplinary infractions.  (*See* Doc. # 19-2 at 12.)

The BOP makes projections of a federal inmate's release date, to both prerelease custody and supervised release, based upon the maximum potential FTCs that inmate could earn during their sentence.  (*See* Doc. # 19-2 at 16 (BOP Program Statement No. 5410.01, providing that the BOP "will initially estimate an FSA conditional Projected Release Date (PRD) by calculating the maximum number of potential FTC that an inmate may earn during his or her sentence").)  Program Statement No. 5410.01 also states that the BOP "will calculate an inmate's PRD by

15

assuming that an inmate will remain in earning status throughout his or her sentence, including while in prerelease custody." (*Id.* at 17.) However, "[t]his FSA PRD is subject to change during the inmate's incarceration, and it will be adjusted if the inmate's PATTERN score changes or if the inmate enters non-earning status."[10] (*Id.* at 16.)

Where a petitioner is subject to a term of supervised release, the FSA permits application of no more than 365 days (365 FTCs) toward reduction of the sentence. 18 U.S.C. § 3624(g)(3) ("The Director of the [BOP] may transfer [a] prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632"). In *Guerriero v. Miami RRM*, the Eleventh Circuit confirmed the scope of § 3624(g)(3) by affirming the district court's decision that the BOP had "applied the maximum 12 months' worth of [FTCs] allowed by the FSA to begin [the petitioner's] term of supervised release." 2024 WL 2017730, at *1 (11th Cir. May 7, 2024) (per curiam); *see also Rivera-Perez v. Stover*, 171 F.4th 196, 210 (2d Cir. 2026) (holding that FTCs can be applied to accelerate the start of supervised release but "[t]hey do not reduce a post-incarceration term of supervised release). Additional FTCs are to be applied to prerelease custody. *See* § 3632(d)(4)(C). However, unlike early placement on

---

[10] "PATTERN" is an acronym for the Prisoner Assessment Tool Targeting Estimated Risk and Needs, which "is the recidivism risk assessment tool and part of the [BOP's] FSA-approved Risk and Needs Assessment System." (Doc. # 19-2 at 8.)

supervised release, the FSA does not impose a numerical cap on the number of FTCs that can be applied toward placement in prerelease custody. The date of a referral to prerelease custody also can be affected by the number of discretionary days granted under the SCA. (*See, e.g.*, Doc # 19-1 at 25.)

## V.  DISCUSSION

Respondent contends that Petitioner's claims under the FSA are not ripe for review and that, therefore, subject matter jurisdiction is lacking. Relying on 18 U.S.C. § 3624(g)(1)(A), Respondent argues that the petition is "premature because a prisoner's future accumulation of FSA time credits is speculative and contingent on future variables." (Doc. # 19 at 4.) He points out also that FTCs can fluctuate based on a prisoner's recidivism risk classification and any conduct resulting in disciplinary action. (*Id.*) Respondent cites district court decisions from other circuits, which have determined that a habeas claim alleging the BOP's alleged miscalculation of FSA earned time credits is ripe for review only if a favorable outcome would result in the petitioner's imminent release. (*Id.* at 5–6.)

Whether a claim is ripe presents a subject matter jurisdictional issue. *Maron v. Chief Fin. Officer of Fla.*, 136 F.4th 1322, 1329 (11th Cir. 2025). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted). The ripeness doctrine prevents "courts, through

17

avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003) (citation omitted). It also shields "agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id.* at 807–08 (citation omitted). Because ripeness is fundamentally an issue of timing, subsequent events can render a case ripe for adjudication even if it was not ripe at the time of filing. *See Shorter v. Warden*, 803 F. App'x 332, 335 (11th Cir. 2020) (per curiam).

Under 18 U.S.C. § 3632(d)(4)(A), "[a] prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits" at the rates specified. There is no dispute in the record that Petitioner is eligible to earn and has earned FTCs.

FTCs "shall be applied toward time in prerelease custody or supervised release," and eligible prisoners shall be transferred, "as determined under section 3624(g), into prerelease custody or supervised release." § 3632(d)(4)(C) (citing 18 U.S.C. § 3624(g)). Section 3624(g)(1) governs the application of earned FTCs and makes their application contingent on the prisoner satisfying multiple conditions:

> **(g) Prerelease custody or supervised release for risk and needs assessment system participants**.--
> (1) Eligible prisoners.--This subsection applies in the case of a prisoner (as such term is defined in section 3635) who--

18

(A) *has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the "System") in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment*;

(B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;

(C) has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and

(D)(i) in the case of a prisoner being placed in prerelease custody, the prisoner--

(I) has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or

(II) has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison, after the warden's determination that--

(aa) the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

(bb) the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

(cc) the prisoner is unlikely to recidivate; or

(ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

§ 3624(g)(1) (emphasis added).

Based on § 3632(d)(4)(C) and § 3624(g)(1), district courts have recognized that a statutory distinction exists between earning FTCs and having those FTCs applied toward prerelease custody or supervised release. "Federal courts around the country read Section 3624(g)(1)(A) to mean that 'the BOP is permitted to apply time credits only once an inmate' has earned enough 'that equal the remainder of her sentence.'" *Adkins v. Engleman*, 2022 WL 14966123, at *2 (C.D. Cal. Sept. 8, 2022)

19

(quoting *Lallave v. Martinez*, 609 F. Supp. 3d 164, 183 (E.D.N.Y. 2022)), *R&R adopted*, 2022 WL 15116425 (C.D. Cal. Oct. 24, 2022); *Holland v. Gabby*, 2025 WL 1287749, at *2 (N.D. Fla. Apr. 9, 2025) ("*Application* of the FSA credits is tricky . . . because although [the petitioner] is eligible to earn credits, her credits become eligible to be *applied* only when she has earned credits 'in an amount that is equal to the remainder of [her] imposed term of imprisonment.'" (second alteration in *Holland*) (footnote omitted) (quoting § 3624(g)(1)(A))), *R&R adopted*, 2025 WL 1285822 (N.D. Fla. May 1, 2025); *Pujols v. Stover*, 2023 WL 4551423, at *1 (D. Conn. July 14, 2023) ("[T]he inmate is not 'eligible' for application of his FSA time credits until the number of credits equals the number of days remaining in his sentence."); *Turner v. Heisner*, 2022 WL 2195348, at *3 (D. Ariz. May 16, 2022) ("Under 18 U.S.C. § 3624(g)(1)(A), FSA earned time credits can be applied toward prerelease custody or supervised release only when accumulated credits are equal to the remainder of the prison term."), *R&R adopted sub nom. Turner v. Cole*, 2022 WL 2192212 (D. Ariz. June 17, 2022).  One reason is because FTCs are subject to forfeiture and, thus, "may be lost."  *Lallave*, 609 F. Supp. 3d at 183.

Therefore, district courts have concluded that a claim seeking application of FTCs is unripe under § 3624(g)(1)(A) where the prisoner has not yet earned credits equal to the remainder of the "imposed term of imprisonment" because the BOP has no statutory obligation or authority to apply FTCs before that threshold is met.  To

illustrate, in *Athikulrat v. Cooper*, the Western District of Washington found that the petitioner's FSA time-credit claim was unripe because, even if he prevailed and received additional FTCs beyond the 315 FTCs he had already earned, his earliest possible release date would advance only from June 8 to early April—still roughly eleven months away. Because success would not result in the petitioner's "imminent release," the claim was dismissed as unripe. 2025 WL 1533193, at *3 (W.D. Wash. May 14, 2025), *R&R adopted*, 2025 WL 1530428 (W.D. Wash. May 29, 2025). Similarly in *Turner*, the petitioner had more than six years remaining on his sentence and conceded that his claimed 330 FTCs did not equal the remainder of his term of imprisonment; accordingly, he was not yet eligible to have those credits applied. 2022 WL 2195348, at *3. The court concluded that, because the petitioner was not yet eligible to have FSA FTCs applied, the § 2241 petition was not ripe for review. *See id.*; *see also Cook v. Gunther*, 2025 WL 3490728, at *4 (D. Ariz. Sept. 16, 2025) ("To the extent that Petitioner is asking the Court to require that the BOP apply his credits toward prerelease or supervised release, his request is not ripe for review because he is not yet eligible for application of the credits."), *R&R adopted*, 2025 WL 3170931 (D. Ariz. Nov. 13, 2025); *Eviglo v. Eischen*, 2023 WL 3597907, at *2 (D. Minn. May 23, 2023) ("[T]he [28 U.S.C. § 2241] petition is not ripe for adjudication as [the petitioner] is currently not entitled to have his time credits applied under 18 U.S.C. § 3624(g)(1)(A).").

Furthermore, § 3624(g)(1) sets out multiple independent prerequisites for the application of FTCs, which must be satisfied before FTCs may be applied toward prerelease custody or supervised release. This multi-factor framework underscores why *eligibility to earn* FTCs presents a different statutory question than *eligibility to apply* them. For example, § 3624(g)(1)(B) requires that the prisoner demonstrate a reduction in recidivism risk, or maintain a minimum or low recidivism risk, during the term of imprisonment. Based on this criterion, the Northern District of West Virginia emphasized that "a prisoner may be eligible under 18 U.S.C. § 3632(d) to earn and receive time credits but not be eligible to have those credits applied under 18 U.S.C. § 3624(g)." *Nevel v. Brown*, 2023 WL 8505881, at *5 (N.D. W. Va. Oct. 27, 2023), *R&R adopted*, 2023 WL 7490046 (N.D. W. Va. Nov. 13, 2023). In *Nevel*, the prisoner was "ineligible to have [his] credits applied" because his recidivism risk was "'high,'" and, thus, he did not satisfy the requirement in § 3624(g)(1)(B). *Id.* at *2; *see also Brown v. Ray*, 2024 WL 5465060, at *7 (N.D. W. Va. Oct. 3, 2024) ("Multiple district courts within the Fourth Circuit have held that a prisoner may be eligible under 18 U.S.C. § 3632(d) to earn and receive time credits, but may not be eligible to have those credits applied under 18 U.S.C. § 3624(g)." (collecting cases)), *R&R adopted*, 2025 WL 369952 (N.D. W. Va. Feb. 3, 2025). Accordingly, even where an inmate has earned FTCs under § 3632(d), those credits cannot be applied unless, and until, the prisoner independently satisfies § 3624(g)(1)'s separate

22

eligibility requirements.    This distinction further bolsters the conclusion that Petitioner's claim is not ripe because, even assuming the prisoner has earned FTCs, any entitlement to have those credits applied turns on additional, forward-looking determinations under § 3624(g)(1), so the alleged injury remains contingent rather than concrete and fit for judicial resolution.

Based on the foregoing principles, the petition is not ripe for review in light of § 3624(g)(1)(A).  According to the March 18, 2026 FSA Time Credit Assessment, which is not in dispute, Petitioner's projected release date based on GCT is May 4, 2029.  (Doc. # 19-1 at 15).  The assessment further reflects that Petitioner has earned 465 FTCs under the FSA (with 365 FTCs provisionally applied toward early placement on supervised release and 100 FTCs provisionally applied toward placement in a residential reentry center or home confinement).  (Doc. # 19-1 at 13.) Petitioner agrees that he "has earned approximately 465 days of FSA [FTCs]" and notes that "Respondent does not dispute" either that figure or the BOP's allocation of those FTCs.  (Doc. # 22 at 5.)  But from March 18, 2026, to May 4, 2029, is 1,143 days, so Petitioner's 465 earned FTCs fall well short of the statutory threshold:  He has not yet earned FTCs "in an amount that is equal to the remainder of [his] imposed term of imprisonment." § 3624(g)(1)(A).

Viewed another way, the BOP's FTC projections result in the same conclusion.  Even if it is assumed that Petitioner continues to earn the maximum-

23

allowed FTCs as projected, his best-case eligibility date for placement in prerelease custody under the FSA is June 14, 2027, which is the FSA Conditional Placement Date reflected in the March 18, 2026 FSA Time Credit Assessment.  (Doc. # 19-1 at 15.)  That date shows Petitioner is drawing closer to eligibility for prerelease custody under the FSA, but it also confirms that he has not yet earned FTCs "in an amount that is equal to the remainder of [his] imposed term of imprisonment." § 3624(g)(1)(A).

Petitioner's arguments are unavailing.  He argues that his "excess" 100 FTCs (*i.e.*, those FTCs earned above the 365) should be deducted from August 18, 2026— the date Respondent has recommended for his transfer to a residential reentry center based on his combined SCA days and earned and projected credits under the FSA. (*See* Doc. # 19-1 at 25.)  Or else, Petitioner contends that the 100 excess FTCs "are effectively nullified" because they "d[o] not materially affect prerelease timing." (Doc. # 19-1 at 10.)  By Petitioner's calculation, subtracting 100 days would move the recommended RRC placement date to May 11, 2026.

However, § 3624(g)(1)(A) ties eligibility for application of FTCs to the remainder of the prisoner's "imposed term of imprisonment," not to a recommended prerelease-custody placement date.  Thus, Petitioner's reliance on the August 18, 2026 RRC referral date finds no footing in the FSA's text.  That date reflects an SCA-based, prerelease-custody recommendation that, by its terms, incorporates both

"forecasted" FTCs and discretionary SCA placement days.  (Doc. # 19-1 at 25 (providing that "in accordance with the Second Chance Act of 2007," Petitioner is being referred for an RRC placement date of August 18, 2026, based on combined "forecasted" FTCs and SCA discretionary days).)  Petitioner cites no authority, and nothing in the record supports the proposition, that § 3624(g)(1)(A) allows the BOP (or this court) to use an RRC recommended referral date under the SCA as the benchmark for applying his excess 100 FTCs.  Nor do the allegations or the exhibits support his conclusory assertion that those FTCs are "effectively nullified" absent that benchmark.  (Doc. # 19-1 at 10.)  The court need not accept Petitioner's proposed calculation because it is conclusory and "contrary to factual details presented in the exhibits." *Lawrence v. United States*, 597 F. App'x 599, 602 (11th Cir. 2015) (per curiam).  In short, Petitioner offers no well-pleaded factual or coherent legal basis for treating his claims as ripe for habeas review.

Finally, although Petitioner's petition is framed under the FSA, his memorandum of law advances arguments grounded in the SCA. (Doc. # 2.) However, combining SCA discretionary days with FTCs to satisfy § 3624(g)(1)(A)'s threshold would circumvent the FSA's statutory structure by creating artificial ripeness before the prisoner actually has earned sufficient FTCs under the statutory requirement.  The discretionary award of SCA days is not part of the FSA statutory calculation under § 3624(g)(1)(A).

25

Because Petitioner is not yet eligible for application of his earned FTCs under § 3624(g)(1)(A), his claims necessarily depend on contingent future events, namely, the passage of time and the accrual and retention of sufficient FTCs to equal the remainder of his term of imprisonment.  These events "may not occur as anticipated, or indeed may not occur at all."  *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted).  Therefore, his claims are not ripe for judicial review.

## VI.  CONCLUSION

The 28 U.S.C. § 2241 petition challenges the BOP's alleged failure to apply Petitioner's earned FTCs under the FSA.  But the nonconclusory, undisputed material facts establish that Petitioner is not yet eligible to have those credits applied under 18 U.S.C. § 3624(g)(1)(A).  His claims, therefore, turn on contingent future events and are not ripe for adjudication, depriving the court of subject matter jurisdiction.

Accordingly, it is ORDERED that the Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 is DISMISSED without prejudice.

Final judgment will be entered separately.

DONE this 1st day of June, 2026.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE

26